Good morning. Melanie Gavisk on behalf of Donald Blankenship. I would like to reserve two minutes for rebuttal. I'm having a little trouble hearing you. Could you pull the mic a little closer? Is that better? That is better. Thank you. I plan to focus my argument today on why the Nevada Supreme Court unreasonably rejected Mr. Blankenship's ineffectiveness claim on prejudice grounds. However, with the Court's permission and if time allows, I would also like to briefly address why I think this Court should certify the uncertified issue and order supplemental briefing on that issue. The Nevada Supreme Court unreasonably determined Mr. Blankenship was not prejudiced by improperly characterizing the evidence against him as substantial and by also failing to consider how the improperly admitted evidence bolstered the State's case while at the same time undermining Mr. Blankenship's. There was no physical evidence connecting Mr. Blankenship to this crime. This was a he said, she said case, and the victim was severely impeached. She was first impeached by her siblings, who said she was dishonest, manipulative, and a liar. And she had a good relationship with her siblings. Her sister lived with her. She said she had a great relationship with her sister. She said her brother was her best friend. Despite those good relationships, both of them told the jury, you shouldn't believe what she's saying. The victim's mother, who was divorced from Mr. Blankenship, also wasn't sure whether she should believe her. She said that she didn't know who to believe. Sotomayor, let's cut right to what I think is the important point for you and see if you can help us on it. This isn't a slim dunk case. It's a close case. Let's assume that counsel inappropriately behaved and got this prior acts evidence into evidence. The State Supreme Court says it doesn't meet the second prong of Strickland. It doesn't demonstrate prejudice. It doesn't demonstrate a probability that there would have been a different result. And we're supposed to defer to that. Tell us why we shouldn't defer. On direct appeal, I would find your argument incredibly persuasive. Thank you. Tell us why in habeas we can find that the State Supreme Court was unreasonable, whatever that means. The habeas standard certainly is a difficult one to meet, as it's meant to be. But in this case, I think we've met it. And the reason why is because what the Nevada Supreme Court did when it rejected this claim is it essentially said notwithstanding the prior backed evidence, there was sufficient evidence to convict. Well, but it also went on to say, and I can find the exact language, but I'm sure you're familiar with it. We find that there's not a reasonable probability that, but for the introduction of this evidence, there would have been a different result. So I think its description of the evidence as substantial isn't the deciding point in the case. It's rather that we think there wouldn't have been a different result. How do we measure that? I've never known how to measure it, but you're obviously arguing there would have been a — probably would have been a different result. Tell us why. Yes. And I'm also arguing that what the Nevada Supreme Court didn't consider was the impeachment value of this evidence. This evidence specifically impeached D.B., who in trial counsel's closing argument, he said, was sort of a critical witness. So her credibility was critical. She was older, right? She was much older than G.B., and she said, she testified, one of these incidents could not have happened. So if the jury believed her, then they necessarily had to disbelieve L.B. But when there's evidence now on the record that they suspect that Mr. Blankenship also abused her, suddenly she has incentive to lie. She has incentive to lie that was not in the record anywhere before. But the prosecutor never argued any of that. What the prosecutor did argue in the closing argument was about there was this other incident where Mr. Blankenship had indicated that he had examined D.B.'s breast to see if there was an abnormality. And the prosecutor did bring that up in his closing argument, which suggests or at least implies that there's this sort of underlying current that Mr. Blankenship also abused D.B. So what do you make of the district court's alternative theory that this was a strategic decision to counter, I think in the words of the district court, counterpunch? I'm sorry, to counter what? To counterpunch. I think there's two answers to that. And the first is that trial counsel clearly exhibited a strategy to keep bad acts out. He successfully was able to keep out prior alleged incidents of sexual assault, and he also mentioned at other points, we don't want to talk about these, we want to keep out bad acts. He successfully excluded the evidence of Larry Affronter about the confrontation that he had with Mr. Blankenship at a grocery store. And the other answer is that the theory of the case here was that the victim was a willful, manipulative teenager who lied, who made up this story. The theory of the case was not that it was a police investigation gone bad, so there was really a reason to impeach the police, which is what some of the bad acts that came out were. It was like, oh, are you, you know, you're just pointing at my — How do we know that? I'm not sure how the district court knew it either, but how do we know that defense counsel wasn't hoping to cast doubt on the investigation? I mean, I — There's no affidavit here that says one way or the other, right? Yeah. And that actually — I mean, I think there's two answers to that. Mr. Blankenship was pro se both in State court and in the Federal district court, and that if this court does agree that they unreasonably determined prejudice, one option it has is to remand this case to the district court for a hearing. If we've come through 2254D, then it might be appropriate to take new evidence on the prejudice — on the prejudice issue if this court is unsure — or, excuse me, on the deficient performance issue. Well, I think what the district court was saying essentially was that counsel got a nonresponsive answer and then had a couple of choices to make. Either he had to, in the words of the district court, counterpunch or try to minimize it or skirt it or object to the court and made a choice. And it may have been a bad choice, but a choice. Which incident are you referring to? I'm talking about the cross-examination. I mean, I would argue that at least one, one of the exchanges, the one that involved DB and the suspected sexual abuse of DB, that one was one where you see it getting worse and worse and escalating and snowballing until ultimately, you know, what it appears to me from the record that counsel has sort of lost his temper. And he says, oh, is your ESP working now? To the victim. Right. Or, excuse me, to the witness. So I think in that case the answer for that one at least is it doesn't appear to me that it sort of slipped in, but instead that he's escalating this conversation and he's specifically asking the question. And another example of that is when the evidence of Mr. Blankenship's criminal history comes out and then he offers, well, was it an armed assault? Or, excuse me, was it a domestic battery? It was a domestic battery. He offers that. And certainly, you know, there's a reason, and I think Mr. Conner pointed out, he tried to minimize the impact of the prior convictions when he says, when prior counsel says, well, it wasn't a felony. Right? But then at the same time, he elicits testimony that it was a domestic battery in a case. And then later there's the evidence, of course, about the domestic battery incident with the victim herself, which involves him throwing her on the floor, apparently pulling her shirt off, and then he characterizes that as a father-daughter squabble. And I don't think the jury or many people would be persuaded by that characterization. In a case that you characterized, I think accurately, as a he said, she said case, what effect on our prejudice determination does it have that your client didn't take the stand? In other words, the question was really her credibility, not your client's credibility, since he never took the stand. And this stuff seems marginal as to her credibility. I understand as to D.B.'s credibility, but as to the victim's credibility, how does this evidence impact the victim's credibility? How does the prior bad acts evidence impact the victim's? Because obviously that was the issue for the jury. Do you believe her or don't you? I'm sorry. Go ahead. I think that it impacted her credibility by shifting the argument from this is a will willful teenager to this is a teenager who's abused by her father physically, right? The physical abuse, there's not even a question about it at this point. It's been elicited. It's not countered. So the narrative changes from when she's making this up to no, this is someone who's abused in many different ways, thereby bolstering her credibility, while at the same time undercutting the defense theory, which is this is just a willful teenager and a strict father. You have about a minute left. You're on reserve. Thank you. May it please the Court, Counsel, Assistant Solicitor General Jeffrey Conner, on behalf of the respondent from the State of Nevada. This court is no doubt very familiar with the Strickland Standard for Ineffective Assistance of Counsel and the fact that when a state court adjudicates a claim on the merits under the Anti-Terrorism Ineffective Death Penalty Act of 1996, that federal courts defer to state court decisions on the merits of a claim. So what are we to do with the Nevada Supreme Court's statement that there's no substantial? That's not the test, is it? Well, Your Honor, if you look at Strickland. Is that the test? The test under Strickland is that but for the alleged deficient performance, is there a reasonable probability that the outcome of the trial would have been different? Right. And the substantiality of the evidence is to me a test for whether or not a case goes to the jury. Surely you can have prejudicial ineffective assistance in a case where there's substantial evidence, can't you? I think it depends on the nature of the alleged deficient performance. Now, with respect to the ---- Well, let's assume substantial evidence in this case, and counsel forgot to put on a perfectly believable alibi witness who could say that you, that Mr. Blankenship was in a different state that day. The substantiality of the evidence wouldn't mean there was no prejudice, would it? I'm not certain I'm ---- Okay. Let's assume he was with Pope Francis that day in Rome. Right. And Pope Francis was willing to testify he was with him, but counsel forgot to put him on. The fact that the evidence against him was substantial wouldn't mean there was no prejudice from that failure, would it? Well, I mean, I don't ---- The obvious answer to that question is no, isn't it? I can't see such a hypothetical situation like that where you actually have substantial evidence establishing the defendant's guilt when he, you know, he's got an alibi. Well, exactly the same evidence. You put on ---- Oh. This is this case. You put on exactly the same evidence. The State's evidence is substantial. I take that, the Nevada Supreme Court's finding on that to be true. And yet there is a perfectly good alibi witness the defense counsel fails to put on. You wouldn't find in that case there was no prejudice, would you? You couldn't, could you? Well, I mean, if he's got a perfectly good alibi, I mean, that's yes. I mean, I think and that's I think what separates this case from the cases that the Petitioner cites in the briefing, Vega v. Ryan and Kennedy v. I believe it's Adams. Those cases involved counsel's failure to investigate an exculpatory witness, and so, therefore, there was information that the jury did not receive that could have undermined the victim's credibility. That didn't happen in this case. What we have in this case is we have witnesses, you know, the defense tries to attack her credibility, but then we've also got witnesses that support her credibility. We've got an informant, albeit a felon himself, but from within the jail who was able to provide the investigator. But I must tell you, you had enough to get to the jury, but having a jailhouse snitch doesn't make the evidence substantial. He provided specific information about the offense itself to the investigator that he, that the investigator had only discussed with the victim. And so that is, to me, a very important point about the victim's credibility. There's also, you have the psychotherapist that testified at trial that the victim was able to give very specific peripheral details about each offense. No, she was credible. I'm in no doubt. But I'm asking a different question. I'm asking whether or not the Court made an error of law in measuring prejudice against the substantiality of the evidence as opposed to looking at whether or not the excluded evidence might reasonably have changed the outcome. Included in this case. I think that's exactly what they did, is they said if you exclude this evidence, there's, you know, there's, you know, yes, okay, it's a he said, she said case. But if we say that about every case like this where you don't have physical evidence of a child sexual assault that gets reported years after the crime, I mean, are we just going to start? Well, I think Judge Hurwitz is actually asking a different question. And his question, if I understand him correctly, is basically did the Nevada Supreme Court get the standard wrong? Now, forgetting the evidence in this case, did they get the standard wrong? Because the standard is not substantial evidence. It's not substantial evidence in the sense of Jackson v. Virginia. Right. You know, a sufficiency of the evidence as opposed to substantial evidence. And I think if you look at the Nevada Supreme Court's decision at excerpts of record EO 54, they specifically lay out the Strickland standard correctly in that it's a determination of whether or not the counsel's error rendered the jury's determination unreliable. And in this case, there was substantial evidence of his guilt that such that in the absence of counsel having asked these questions, the result of the trial still would have been the same. They didn't say that, though. Now, I think I would. I think it said the appellant failed to show that there was a reasonable probability of a different result at trial. I guess the question would be, in determining whether there was a reasonable probability of a different result at trial, doesn't the Court have to necessarily weigh the evidence and consider what happened at trial? Is there any other way of making that determination? Well, I mean, I think that's what the Nevada Supreme Court did here. They specifically said appellant failed to show there was a reasonable probability of a different result at trial had the district court precluded the testimony about appellant's prior criminal record, because there was substantial evidence of guilt notwithstanding the prior bad activity. I'm sorry, Judge Yakuta, go ahead. I'm just wondering if there's another way to determine whether there's a reasonable probability of a different result in a case like this. Is there some other way? Not that I can conceive. I mean, that's specifically what Strickland says, is you take the record as a whole and look at it in its totality and apply, you know, looking at it from the standpoint of a conscientious jury who's been properly instructed on the law, applying the correct legal standard, whether or not there would be a reasonable doubt as to the victim's guilt. And I think that's precisely what the Nevada Supreme Court did here. Let me try this again with the clarifications that my colleagues have put on the question and see if we can engage each other on it. You do have to compare the evidence at trial to the evidence that either was excluded or came in to see whether or not this would meet the second Strickland problem. Normally in these cases, what we see is a state court saying something like, even if this evidence had been excluded, it wouldn't have mattered because his evidence of guilt was overwhelming. The evidence of guilt was very strong. All we have here is the notion that the evidence was substantial, which is, as you recognize, sounds like a Jackson standard, not a Strickland standard. So what I'm trying to find out is why you think the Nevada Supreme Court applied the correct rule of law here, not whether it arrived at the correct result. I disagree, Your Honor. I don't think substantial fits within Jackson. Jackson is a very different standard than what I think the Nevada Supreme Court did here. Okay. So let's assume it's somewhere in between sufficient and overwhelming. Is it enough? Can you conclude that something wasn't prejudicial simply because it was substantial, the evidence, other evidence was substantial? I think that's yes. I think in this case the Nevada Supreme Court's determination was reasonable. Let's assume hypothetically that we thought that they got the standard wrong on that. Where would that leave us analytically? And I know you disagree with that, and you've got some good reasons to. But hypothetically, if the Nevada Supreme Court applied the wrong Strickland standard on prejudice, where would that leave us in terms of our analysis? Well, I think that kind of dovetails into also how I think you have to address the deficient performance prong in this case. As Harrington v. Richter notes, you know, there has to be a well-founded error that's beyond fair-minded disagreement and that no reasonable judge could reach the determination that there wasn't prejudice in this case. What in the world was defense counsel thinking of? I've spent a lot of time trying to figure out a good reason to do this, and I can't. I think, and if you look further into the testimony here, specifically into the next cross-examination of the very next witness, Detective Rye, he is trying to impeach or attack the credibility not only of the victim, but of law enforcement in this case. And I would disagree with opposing counsel's characterization of the theory here at trial because in the closing argument, counsel did attack the thoroughness of the investigation. And that's specifically what he was doing. I see that I'm out of time. Go ahead and finish your answer. So with respect to the deficient performance prong, there was a specific objective that counsel was engaged in here. He was attacking the detective or the initial investigator for not having conducted a thorough investigation. And part of that was attacking him for not returning to interview the victim or, excuse me, the sister in the absence of the defendant. But then she was later interviewed in his absence. And so that's, I think, what was going on here. Do you agree because the Nevada Supreme Court didn't reach this issue that if we were to reach it, there wouldn't be any deference? No. I absolutely disagree with that. Where does the Nevada don't they assume deficient performance? I don't think they assume it. They just don't discuss it. Okay. So they made no findings on it at all, correct? In the absence of that, Harrington says, and I know that there's differing case law from the Supreme Court when Peabody v. Beard, Wiggins v. Smith. But Harrington says, where a State court's decision is unaccompanied by an explanation, the habeas Petitioner's burden still must be met by showing there was no reasonable basis for the State court to deny relief. Well, this is a fully explained decision. Those are cases that deal with postcard denials. The next sentence of Harrington says, This is so whether or not the State court reveals which of the elements in a multipart claim it found insufficient. Section 2254d applies when a claim, not a component thereof, has been adjudicated. And so once the claim itself is adjudicated, the State, the Federal courts are to give deference to the State court's judgment in denying relief. And so if there is any reasonable basis upon which the State court could have denied relief, the Federal courts are to defer to that. Thank you, counsel. Thank you for the extra time, Your Honor. I appreciate that. Let's put two minutes on the clock. Thank you. If the Nevada Supreme Court didn't reach the deficient performance prong, the correct standard of review is de novo. And actually, Justice Aicuda very — explained that very nicely in her dissent in Iola v. Wong, where she explained when a court has not reached a prong, right, then any presumption of adjudication on the merits is rebutted. But California v. Johnson said that we're to presume that the State court addressed it, addressed the issue. In Rompia, the State courts specifically said we're not going to address this deficiency, but there was no such statement in this case, was there? There wasn't. In that case, and as I argued in the briefs, the best reading of it is that they found deficient performance. Did the court say that? There's no statement that it found deficient performance and there's no statement that it expressly wasn't going to reach that prong. That's correct. Throughout the opinion, when the Court wanted to say there was no deficient performance, it very clearly said that. And I think it may say it over 30 times. There are a number of claims. So throughout its opinion, when it rejects other claims, it says he has failed to prove deficient performance or prejudice, failed to prove deficient performance or prejudice. It's the same statement again and again. And when you get to this claim, the Court says — discusses how the evidence was improperly admitted. That's also what it said on direct appeal. And then moves on to prejudice. So I would argue the best reading of that is that there was deficient performance. But alternatively, there was no adjudication on the merits, and we know that based on how it did other claims, right? When it did — when it wanted to say there was no deficient performance, the Court simply said it. Well, it adjudicated the Strickland claim on the merits. Oh, excuse me. It didn't adjudicate the — It didn't address the deficiency. And Johnson v. Williams, I guess it is, on the Supreme Court, said we presume absent strong evidence to the contrary that the State court denied that — that component. And I would say the strong evidence to the contrary here is both that when it rejected deficient performance, it did so on the merits, and also that — or it did so explicitly and that also here it discussed how this evidence shouldn't have come in. I see that I'm just about out of time, and I wanted to say one more thing about prejudice, which is that if this Court is unsure about prejudice, it's really appropriate to remand all these claims that weren't decided that were improperly dismissed so we can accumulate prejudice. Thank you, counsel. Thank you. Thank you both for your arguments today. The case just heard will be submitted for decision.
judges: Thomas, Ikuta, Hurwitz